******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

ELGO, J., concurring in part and dissenting in part. This appeal involves a property dispute between the plaintiffs, Thomas J. Crossen, Jr. (Thomas), and Susan R. Crossen, and the defendants Heidi Diehl and Michael Martin. I agree with the majority's decision insofar as it affirms the judgment of the trial court rendered in the plaintiffs' favor on counts one and two and in Thomas' favor on count five of the operative complaint. I disagree, however, with the majority's decision to reverse the judgment rendered in Thomas' favor on counts three and four, i.e., his claims for intentional infliction of emotional distress and negligent infliction of emotional distress, respectively. Unlike the majority, I conclude that the court did not err in its findings related to the COVID-19 pandemic. In light of this, I respectfully dissent from the majority's decision reversing the judgment of the trial court as to counts three and four. Because I would affirm those counts, I would also affirm the court's award of punitive damages for intentional infliction of emotional distress. In all other respects, I agree with the majority.

I note that we review the trial court's findings under the clearly erroneous standard of review. See, e.*g.*, *Karaoke Heroes NH, LLC* v. *RVRM Enterprises, LLC*, 237 Conn. App. 762, 772–73, 354 A.3d 250 (2026). Furthermore, I note that the trier of fact is entitled to "draw all fair and reasonable inferences from the facts and circumstances [that] it finds established by the evidence . . . ." (Internal quotation marks omitted.) *In re Shane M.*, 318 Conn. 569, 595, 122 A.3d 1247 (2015). "Thus, in determining whether the evidence supports a particular inference, we ask whether that inference is so unreasonable as to be unjustifiable. . . . In other words, an inference need not be compelled by the evidence; rather, the evidence need only be reasonably susceptible of such an inference." (Internal quotation marks omitted.) *Curran* v. *Kroll*, 303 Conn. 845, 857, 37 A.3d 700 (2012). Additionally, I note that trial courts, sitting as triers of fact, "are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observations and experience of the affairs of life, but, on the contrary, to apply them to the facts in hand . . . ." (Internal quotation marks omitted.)

*Onyilogwu* v. *Onyilogwu*, 217 Conn. App. 647, 657, 289 A.3d 1214 (2023); see also *Fernwood Realty, LLC* v. *AeroCision, LLC*, 166 Conn. App. 345, 386, 141 A.3d 965, cert. denied, 323 Conn. 912, 149 A.3d 981 (2016).

Regarding the intentional infliction of emotional distress tort, our Supreme Court has favorably quoted the Illinois Supreme Court, stating: "It may be the pattern, course and accumulation of acts that make the conduct sufficiently extreme to be actionable, whereas one instance of such behavior might not be. . . . It would be logically inconsistent to say that each act must be independently actionable while at the same time asserting that often it is the cumulative nature of the acts that [give] rise to the intentional infliction of emotional distress. Likewise, we cannot say that cumulative continuous acts may be required to constitute the tort but that prescription runs from the date of the first act. . . . Because it is impossible to pinpoint the specific moment when enough conduct has occurred to become actionable, the termination of the conduct provides the most sensible place to begin the running of the prescriptive period." (Citation omitted; internal quotation marks omitted.) *Watts* v. *Chittenden*, 301 Conn. 575, 594–95, 22 A.3d 1214 (2011), quoting *Feltmeier* v. *Feltmeier*, 207 Ill. 2d 263, 282, 798 N.E.2d 75 (2003).

This court has likewise held that extended periods of misconduct can aggravate misconduct into the extreme and outrageous. See *Bell* v. *Board of Education*, 55 Conn. App. 400, 411–12, 739 A.2d 321 (1999) (concluding, on motion to strike, that allegations that defendants "subjected the plaintiffs' minor children to an 'atmosphere of chaos, disruptiveness and violence' in which school became a 'place of fear'" and that such conduct occurred for two years were behaviors sufficiently pleaded to establish prima facie case for intentional infliction of emotional distress); *Schnabel* v. *Tyler*, 32 Conn. App. 704, 717, 630 A.2d 1361 (1993) (affirming jury's damages award for intentional infliction of emotional distress when complainant was "continuously subjected to internal investigations and disciplinary proceedings," subjected to abuse and ridicule, and mistreated

multiple times at work), aff'd, 230 Conn. 735, 646 A.2d 152 (1994).

In concluding that Thomas did not provide sufficient evidence to establish intentional infliction of emotional distress and negligent infliction of emotional distress, the majority states that "our review of the record reveals no evidence to support the court's finding that the fact that the spitting incident occurred during the pandemic contributed to Thomas' emotional distress. The *only* evidence presented at trial regarding the pandemic was Thomas' chronological testimony that the spitting incident was right at the tail end of [the pandemic] . . . . Neither that testimony, nor any reasonable inferences drawn therefrom, establish that Thomas' emotional distress was affected by the pandemic at all. The trial court merely speculated as to the impact of the pandemic on Thomas' mental state without some basis of definite facts to enable the [trier of fact] reasonably to infer such an impact." (Emphasis in original; internal quotation marks omitted.)

Unlike the majority, I do not read the trial court's decision so narrowly as to pin the entirety of Thomas' intentional infliction of emotional distress and negligent infliction of emotional distress claims on the COVID-19 findings alone. I am also not convinced that the record was so bereft to conclude that the spitting incident, in concert with the defendants' described "campaign of harassment"[1] against the plaintiffs, warrants reversal of the intentional infliction of emotional distress and negligent infliction of emotional distress counts.

The court specifically found that Martin "twice spat on Thomas . . . ." In addition to the spitting incident, the court also found that, from 2018 onward, Martin, in concert with Diehl, had hung disparaging signs near the border of the plaintiffs' property, engaged in multiple instances of trespass, each year expanded their beach, taking away a little more of the plaintiffs' property, acted

---

[1] In finding negligent infliction of emotional distress, the court specifically described the defendants', and specifically Martin's, conduct as a "campaign of harassment" against the plaintiffs, specifically Thomas.

hostilely toward the plaintiffs and their guests, taunted Thomas, placed structures on the plaintiffs' property and in the plaintiffs' waterfront, made multiple arguments and derogatory hand gestures directed toward the plaintiffs, and yelled profanities at the plaintiffs in front of their grandchildren. The court also found Martin nearly struck Thomas with his vehicle and berated both him and the first surveyor that the plaintiffs hired to try to settle the boundary dispute. Martin, on another occasion, attempted to instigate a fight with Thomas after shouting obscenities at him, yelling, and belittling him. Finally, the court found that Martin twice spat on Thomas during the COVID-19 pandemic, while also attempting to instigate a fight and cursing at him. As a result of the ongoing "campaign of harassment," which culminated in the spitting incident, the court found that Thomas suffers frequent headaches and insomnia.

It is in this context that the court found that the plaintiffs had established a "course of conduct over the past several years" that "show[ed] a calculated effort to upset and insult the plaintiffs." In this context, the court found that the "psychic toll of *experiencing such abuse* [was] compounded by the . . . COVID-19 pandemic." (Emphasis added.) The court found that the spitting incident, specifically in that tense and uncertain time of the COVID-19 pandemic and lockdowns, would "naturally create feelings of fear and anxiety regarding infection in addition to feelings of humiliation and anger."[2]

In other words, I read the trial court's decision as finding that the spitting incident, in light of the "campaign

[2]Mindful that the court, sitting as a trier of fact, is entitled to apply common sense to the facts of each particular case; see, e.g., *Fernwood Realty, LLC* v. *AeroCision, LLC*, supra, 166 Conn. App. 386; I note that many courts have referenced to or taken judicial notice of the COVID-19 pandemic, the lockdowns and the uncertainty of that shared and near universal experience. See, e.g., *D'Augusta* v. *American Petroleum Institute*, 117 F.4th 1094, 1104 (9th Cir. 2024) (stating that "the outbreak of the global Covid-19 pandemic" was "an 'obvious alternative explanation'" that accounted for conduct in question), cert. denied, U.S. , 145 S. Ct. 1478, 221 L. Ed. 2d 589 (2025); *Ryan* v. *UMass Memorial Health*, 728 F. Supp. 3d 215, 217 (D. Mass. 2024) (taking judicial notice "that, starting in early 2020, the spread of the highly

of harassment" and the ongoing COVID-19 pandemic, elevated Martin's misconduct from the inappropriate

contagious novel coronavirus known as 'COVID-19' had a dramatic impact on daily American life"); *Leeth* v. *Secretary of Veterans Affairs*, 716 F. Supp. 3d 562, 573 n.4 (S.D. Ohio 2024) (taking judicial notice "that the COVID-19 pandemic was in its early stages" at time in question); *Bushra* v. *Main Line Health, Inc.*, 709 F. Supp. 3d 164, 175 (E.D. Pa. 2023) (taking judicial notice "that COVID-19 caused a deadly global pandemic at a scale unseen in a century" and "killed over one million people in the United States since February 2020"), aff'd, Docket No. 24-1117, 2025 WL 1078135 (3rd Cir. April 10, 2025); *Federal Trade Commission* v. *Romero*, 658 F. Supp. 3d 1129, 1135 (M.D. Fla. 2023) (taking judicial notice that "COVID-19 is a disease caused by the virus severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2), a new virus in humans causing respiratory illness which can be spread from person-to-person" (internal quotation marks omitted)); *Basank* v. *Decker*, 613 F. Supp. 3d 776, 786 (S.D.N.Y. 2020) (taking judicial notice that "COVID-19 causes severe medical complications and has increased lethality amongst people of advanced age, and those with underlying health problems"); *Cordish Cos.* v. *Affiliated FM Ins. Co.*, 573 F. Supp. 3d 977, 984 (D. Md. 2021) (observing that "[t]he [COVID-19] pandemic has impacted almost every aspect of our lives"), aff'd, Docket No. 21-2055, 2022 WL 1114373 (4th Cir. April 14, 2022); *Middleton* v. *Andino*, 481 F. Supp. 3d 563, 565–66 (D. S.C. 2020) ("The COVID-19 virus is primarily spread by direct, indirect (through contaminated objects or surfaces), or close contact with infected people via mouth and nose secretions. These include saliva, respiratory secretions or secretion droplets." (Internal quotation marks omitted.)); *LigTel Communications, Inc.* v. *Baicells Technologies, Inc.*, 455 F. Supp. 3d 792, 811 (N.D. Ind. 2020) ("[t]he [c]ourt is mindful of the unprecedented magnitude of the COVID-19 pandemic"), appeal dismissed, Docket No. 20-1896, 2020 WL 9813549 (7th Cir. November 12, 2020); *Livas* v. *Myers*, 455 F. Supp. 3d 272, 275 (W.D. La. 2020) (explaining that "the [COVID-19] virus spreads primarily through droplets of saliva or discharge from the nose when an infected person coughs or sneezes"); *United States* v. *Clark*, 448 F. Supp. 3d 1152, 1156 (D. Kan. 2020) ("[t]he court is mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents"); *People* v. *Zemek*, 93 Cal. App. 5th 313, 326–27, 310 Cal. Rptr. 3d 812 (2023) ("The trial here occurred under difficult circumstances, a time when COVID-19, a global pandemic, continued to terrorize the community . . . . [A]t [that] time . . . the world looked much different than it does today, especially considering that the federal emergency declaration regarding the COVID-19 pandemic expired on May 11, 2023 . . . . This context is important in viewing the trial court's actions." (Citation omitted.)); *Grisham* v. *Romero*, 483 P.3d 545, 550 (N.M. 2021) (taking judicial notice of "the serious health risks posed by COVID-19, a 'highly contagious and potentially fatal' disease").

to the extreme and outrageous. It was not the spitting alone that constituted an intentional infliction of emotional distress nor a negligent infliction of emotional distress; it was the culmination of all misconduct over the course of years that led the court to find that Martin had intentionally inflicted emotional distress. Considering the particular facts of this case and in light of the deference we afford to the trial court as the trier of fact, the commonsense inferences the trier of fact was entitled to make, the near universal experience that was the COVID-19 pandemic and the lockdowns, and Thomas' testimony at trial, I conclude that Thomas presented enough evidence for the court to find that Martin had intentionally inflicted emotional distress and negligently inflicted emotional distress. I therefore would uphold the court's determinations as to those two counts.

In light of the foregoing considerations, I respectfully dissent from the majority's decision insofar as it reverses the trial court's judgment rendered in Thomas' favor on counts three and four of the operative complaint. Because I would affirm the court's judgment on counts three and four, I would also affirm the court's award of punitive damages on those counts. In all other respects, I agree with the majority.